Veterans case and a patent case from the District Court. And our first case is James Abels v. DBA, 2018, 1484, Mr. Geyser, Ms. Geyser. Good morning, and may it please the Court. My name is Alexandra Geyser, and I represent U.S. Army veteran James Abels. The two core issues in this case are the Veterans Court's misinterpretation of the word relevant and misinterpretation of the phrase reasonable possibility of helping to substantiate the claim and the statutory duty to assist. This records are relevant on their face because they relate to the benefits Mr. Abels is claiming. That alone triggered the duty to assist. What do you say, though, about the government's argument that GOLTS against Shinseki requires has a two-part test, not just the one-part test for which you're arguing? I'm pointing, as you, I'm sure, are familiar with, the language at page 1321 of GOLTS, which says relevant records for the purposes of 1503A are those records that relate to the injury for which the claimant is seeking benefits. That's your argument. And have a reasonable possibility of helping to substantiate the veteran's claim. It sounds like a two-part test, not the one-part test for which you're arguing. Your Honor, we are arguing for both parts of the test as this Court articulated in GOLTS. The language comes from two different parts of 1503. In what respect are you saying that the Veterans Court misapplied that test? If you are adopting the two-part test as opposed to the one-part test, how did they misapply the legal standard, which is what our question has to be? Sure. So this Court's jurisprudence is clear that if records relate to the benefits being claimed, then they have a reasonable possibility of helping to substantiate that claim. In GOLTS, the problem was that the records he wanted to obtain were Social Security records related to back pain from a car accident, which had, the Court determined, had no reasonable possibility of helping to substantiate his claim for PTSD before the VA. So here, Mr. Abel's private medical records relate to his shoulder and knee claims for which he's claiming benefits. Right. But that really is part one of the test, right? It's does it relate to the same injury or the same part of the body that's injured? How does that deal with part two? Sure. So part two So you're folding part two into part one and saying if part one is satisfied, then part two is necessarily satisfied. You're not saying that, are you? I think as a practical matter, that's how it works out, Your Honor. In the Sullivan case, this Court determined that the duty to assist applied for a VA examination that determined there was no current injury. So as a practical matter, it was unlikely that those records were going to help to substantiate the claim. But because they related to the injury being claimed, there was at least a reasonable possibility that they would help to substantiate the claim. So I agree that as a legal matter, it's been set forth as a two-part test, which I think makes sense based on the way that the statute is written. It distinguishes a little bit between the general duty to assist, which is where you get the reasonable possibility language, and then the specific duty to assist when it relates to private medical records versus service medical records versus VA medical examinations. The statute is expansive. And where in the Court of Appeals decision do you see the Court having misapplied that legal standard, adopted a different and erroneous legal test? Yes, it's on Appendix Page 11, Your Honor. So the Court errs on both prongs of the test, is what we're arguing. So the first error is determining that the records weren't relevant, even though they relate to the benefits being claimed. But then the second error does relate to prong two, which you brought up. Isn't the question of relevance a fact question? Your Honor, often it is. Here, it's a question as a matter of law. So what this Court said in Goltz is that the Veterans Court is allowed to look at the evidence before it to determine if records that seem irrelevant, so don't relate to the claim, may in fact have a reasonable possibility of helping to substantiate the claim. To your question, Judge Bryson, the Veterans Court misinterpreted the statute and made an unlawful initial factual finding, determining that the records had, quote, no possibility of substantiating Mr. Abel's claim. But this Court said, and more, that it fails to understand how the Veterans Court, without examining the records, can have any ideas as to whether they would or would not, on the merits, support the claim. So this was error because not only was it an improper initial factual finding, but the Veterans Court lacks the medical expertise that's required to know whether current medical records could possibly prove nexus. That goes against not only the facts and more, but also against a Veterans case called McClendon, which basically illustrates that, as it relates to CFR 3.159, medical expertise is required to make medical judgments. And so here, what the court did is it took the Veterans statement discussing the contents of the records and made an ultimate factual determination on the merits, even though the board had never weighed whether or not these private medical records were relevant. So this Court said in Sullivan, the second part of Sullivan, that that exceeds an appellate court's jurisdiction. It, under no circumstances, can make an initial factual finding. Well, let me ask you about that because that bears on the question, I guess, ultimately of harmless error. And here, the Veterans Court did make a finding of harmless error with respect to the failure of the board to discuss the medical records issue. I take it that after Sanders and Newhouse, it's pretty clear, tell me if you disagree, but it seems to be pretty clear that one area in which the court can make a factual determination is in determining whether there's harmless error. Would you agree with that? Yes, Your Honor. Here, the Veterans Court did not make a harmless error determination as it related to relevance and the duty to assist. They only made the prejudicial error analysis on the reasons and basis argument that appears on appendix page 12. And so I think that there are a couple of different ways to parse that legal error. Initially, getting it wrong that the duty to assist wasn't triggered is certainly a prejudicial error because it means that the veteran is not going to get his private medical records, which we've been able to obtain and would be happy to send to the Veterans Court on remand. He won't even have those records reviewed. So the reasonable possibility that they could substantiate his claim doesn't get fulfilled. So that's certainly prejudicial. I think second, though, maybe the more legal question is whether there's harmless error if, as in Goltz, records that aren't relevant and don't have a reasonable possibility of substantiating the claim aren't retrieved. And we would agree with this court's holding in Goltz that if they're not relevant and they don't have a reasonable possibility of helping to substantiate the claim, not getting them is harmless error. Here, though, that's not what happened. Does that answer your question? Thank you. Yes. You also suggest that there was an error in failing to satisfy the duty of assist by not obtaining his military medical records. But as I understand it, the holding below is that basically you didn't give sufficient information for the government to have identified anything else. Where is it that you think the veteran at some point alerted the government to the presence of other records that they didn't obtain? Sure. So that's on appendix pages 108 to 109. That's actually the second time that the veteran identifies it. So he initially raises this in 2009. And then there are a series of grants and remands dealing with his ear claim as well. In what form did he raise the location of the military records issue before his testimony before the board? Sure. He raised it, I believe, in his initial claim. I'm not exactly... Do you know where that is in the record? I don't right now, but I'd be happy to bring it on rebuttal. Okay. Yeah. Thanks. So he raises it in 2009. Okay. Wait. I'm sorry. I'm on pages 108 and 109. Yes. Where is it that you think that he said that alerts the government to the presence of military records? Sure. So these are... It's the court-martial records. Everything that in the government... So here's the problem I have. To the extent that you identified a location, it seems to me the government went to each of those locations and searched for medical records and could say, well, my records could have been sent to a court-martial proceeding. He alerted the government to no information about who the court-martial proceeding would have been of, or it seems specifically exactly where the court-martial even took place or the exact dates of the court-martial. I feel as though if we were to agree with you, we would be creating a really overwhelming burden and placing it upon the government that if the veteran alleges that his military records could have been moved to Europe, go find them. I don't see any specificity. Unfortunately, the veteran cannot recall the name of the court-martialed individuals or the precise location of the dates or anything. And so it just seems way too ambiguous to suggest that this puts a burden on the government. Respectfully, he does identify at least one person, Sergeant Brewer, who he believes was required to. No, Sergeant Brewer was not a person who was being court-martialed. Sergeant Brewer was just someone else who he thought was another potential witness. And what he said is, and I think Sergeant Brewer either retired somewhere in Germany or somewhere in California. There were two different people. One, he said, I think they retired to Germany. The other, he said, I think they retired to California. And that was not the person who he believes was being court-martialed. It was rather another witness. So the records wouldn't have been associated with Sergeant Brewer. So now are you suggesting that if a veteran identifies a person who might know something about where records could possibly be located, that the military has an obligation to go find that retired person and question them in order to satisfy its burden? No, Your Honor. What I'm suggesting is that when the veteran identifies categories of requires that the government look at each type of category. In its formal finding of unavailability, the government only looked at clinical treatment records. It did not even make a cursory attempt to look at court-martial records. But I'm suggesting that you didn't identify them with specificity. If a veteran says, go find my medical records, the government does not have an obligation to go to every possible VA clinic in the world to try to see if he was there. No, but a simple Google search reveals one Sergeant Brewer who was in Germany during the 1960s and could have reasonably been him. So the government doesn't have... But Sergeant Brewer is not alleged to be the person, by your client, not alleged to be the person who is being court-martialed. Your client suggested that his medical files could be with the court-martial files. Those would not be files in Sergeant Brewer's possession or in the name of Sergeant Brewer. They'd be in the name of whoever the court-martial proceedings were about. Presumably, but we don't know that. Mr. Ables has asked his congressman for help. He's tried to separately identify and locate Mr. Brewer, but he has an uphill battle in that he doesn't have any more information than the VA does. Now, as to this issue, I understand that this service medical records issue was not raised before the CAVC. Is that correct? Yes, Your Honor. It wasn't raised? Correct. So how can it be the case that the CAVC made a legal error, which is the predicate for our review, on an issue that wasn't even raised? Sure. So the CAVC determined that Ables' claim had been properly adjudicated and that all of the relevant evidence was before it, and we would argue that as a matter of law that's incorrect. You mean it's incorrect for them to say that there was not a legal error in the way the case has been presented to them, and you say that if there was an issue that wasn't presented to them, as to which you think there was a legal error, then their adoption, their affirmance of the Board, is itself legal error? Is that what you're saying? So, yes, 7292 and Morgan would indicate that this Court can fix legal error wherever it exists. We would argue the main legal error occurred in the private medical records sphere, but under Sullivan, this Court did exercise jurisdiction over a duty to assist claim that was not specifically made to the Veterans Court because it was likely to occur on remand. And so what we would like is to remand on the private medical records, which we have and would like to send to VA, and then additionally to remand on the duty to assist with regard to his service medical records. Ms. Geiser, your time has expired, but since you've been answering a lot of questions, we'll give you two minutes for rebuttal. Thank you, Judge. Mr. Grimaldi. May it please the Court. Good morning, Your Honors. The Secretary respectfully requests that this Court dismiss the appeal or, in the alternative, affirm the decision of the Veterans Court. If Your Honors wouldn't mind, I'd like to first approach the Western Orthopedics records, the private records, and then the service medical records, sort of in the order that was my colleague addressed. Before you get to that, let me just ask you on the jurisdictional question. The appellants are arguing that the Court applied the wrong legal test on the question of whether there is a pertinent and irrelevant injury. Correct. That seems to me to be a legal question. If that's what the Court did. Whether that's the wrong test. Right. Well, they're saying that the Court did that, that the Court made a legal error. Now, they may be wrong in that the test they proposed may not be right, or the Court may not have committed said legal error. But isn't the argument that the Court committed a legal error itself a legal argument that we have jurisdiction to attend to? I apologize, Your Honor. The name of the case is escaping me, but this Court is tasked with looking at the crux of an argument. What is the argument actually saying? Not how it's framed. So certainly anyone can frame any argument to be a legal question, but we need to look at what actually is being argued here. And what's being argued here is a misapplication of the gold standard to the facts of this case. That's application of law to fact. So look behind the actual statements that this is a pure legal question, to quote them from their brief, and you see that we're talking about. I will say I was a little surprised at the appellant's position with respect to Goltz this morning, because I had thought that their position was that Moore established that there is really only one test, which is, is the injury the same injury or the same location in the body? Right. Today, they seem to be saying, well, no, that Goltz is correct, that there are two different components of the test, but at least with respect to the position they took in the case, they understood it. It seems to me that's a pure legal question. Is there a one-part test or a two-part test? There is a two-part test. Well, maybe there is and maybe there isn't, but that's a legal question, is it not? Sure. Well, Your Honor, if the allegation was that a wrong test was used, that there was a different legal test that should have been used, yes, Your Honor, I agree with you that there would be jurisdiction. It's not how I read the briefing. I certainly read the briefing that they skipped goals in the opening brief. Well, that's okay, because you skipped Moore in your reference. I did. You know, and I, preparing for this argument, I immediately regretted that, Your Honor, because I should have addressed it. Moore did come first, Goltz came after, and we do believe that Goltz is the correct standard. My research has shown is that the case that is often cited here— Well, wait. If Moore came first and Goltz came after, and you're saying Goltz is the correct standard, you say that as though they are different standards, and then that couldn't be the case, right? Oh, no. I apologize, Your Honor. Yes. May I clarify our view on Moore then? Yes. No, Moore was applying the gold standard. Now, certainly one important difference here— Moore could have been applying the gold standard because Goltz came after. I know because I wrote it. Right. So they weren't applying the Moore standard. If the test is equivalent, Your Honor. It's the same test. Certainly, what they're looking at in Moore was very different than what they were looking at in Goltz, and the reason why first was that there was a misinterpretation of a regulation in Moore. There was an issue about mental illness. But here, it's my understanding that your opponent is arguing there's a misinterpretation of the definition of relevant. Correct. Well, that's a legal question. If what the meaning of the word relevant is, as it appears in the legal text, it seems to me is certainly a legal question, and so she's suggesting that under Moore, the case law indicates that you meet—you satisfy the test for relevance if it is a medical record related to the exact same injury for which you're seeking compensation, full stop. Goltz went further, is my understanding of her argument, in elaborating on the test, in a scenario where the person is seeking medical records that are related to a different injury than the one being sought disability records for. Do you agree with that? Well, certainly in Goltz, he was seeking records related to a different injury, but Goltz doesn't have any language in it that limits it to that application. Would the Goltz overrule Moore? I think they're consistent, Your Honor. Is it possible? I didn't ask— Oh, no. Is it possible? I believe the first case controls, Your Honor. Correct. So if the first case controls, and if the first case says the relevance test is met if it is a record that goes to the exact disability for which you're seeking compensation, the exact injury, could Goltz have come along afterwards and changed that test? It cannot change the test, but I don't believe that Moore is so limited in how it's actually written, Your Honor. Why don't you tell us how you read Moore? Yeah, certainly, Your Honor. Because I think we're going to go there, and that's important, at least. Right. Absolutely, Your Honor. And certainly in Moore, there was a big difference between Moore and Goltz in the present case because there was an allegation of a misinterpretation of 38 CFR 4.1 in that case. Mr. veteran Moore suffered from a mental illness, and the way that he was rated was based upon a single action demonstrating that mental illness. But when rating mental illness, one must look at the entire history of the individual to determine whether or not it was an isolated incident of demonstrating the mental illness or prolonged incidents over time. Does the opinion say that? Does the opinion say in it, in order to assess a mental illness as opposed to a physical disability, you have to look at this entire history? Does the opinion make that distinction that you're asking us to draw? If I'm remembering correctly, I think the words I remember were abate and recur, Your Honor. I hopefully have highlighted the correct words here. Because the position that the United States took in Moore, excuse me, that the Veterans Court took in Moore was that records that predated could not be relevant to the mental illness. And that was a misinterpretation right there, Your Honors. So certainly there was jurisdiction in Moore right there. We have a misinterpretation, a misunderstanding on how to rate an individual with mental illness. Goals was certainly different. Now, goals is talking about two different... I guess I still don't understand. I really need to understand the government's impression of the rule of law that comes from the precedential decision of Moore. And I guess I don't fully understand it yet because I'm trying to figure out how Moore and Goltz fit together. Certainly. Because, quite frankly, the facts of this case are much, much more consistent with the facts that were present in Moore. And in particular, to follow up on Judge Moore's question, if you could focus on the language, which is on 1375, which is the critical language, at least for my purposes... Of goals, Your Honor? Of goals. Talking about Tripler's records are relevant on their face because Moore is seeking disability compensation for the same disability. So that's the, to me at least, that's the crux of the problem for your reading of Moore and how do you deal with that. So if you have the West... Right. It's at the bottom of the left-hand column of 1375. Correct, Your Honor. What the distinction between goals is that it's very explicit where what Moore is talking about is sort of... Goals is specific in the sense that it considers harmless error explicitly in announcing the two-part test. Is it related to the injury? Will it help substantiate the claim? Looking at what Moore said, Moore says basically the same thing without announcing a two-part test. It certainly says that on its face it's irrelevant because it's related. But then it goes on. It says, So they're saying right there that these records could help substantiate his claim because his disagreement with the VA was that he had a chronic problem, not a one-episode issue. So Moore, while not announcing a two-part test,    He's not announcing a two-part test. that Goals was very explicit about afterwards. So that's how those two cases work together. So if the VA found a problem with his claim and the records could substantiate that problem that they found or be relevant to that problem, then you believe they're relevant under Moore and Goals? Yes, because the Goals test is... Okay, so let's look at page 215 of the appendix, please. What is this document that I'm looking at? This is Dr. Graves' medical examination, a VA doctor? Right. This is the medical examination. In fact, it's quoted and relied upon by the board, its decision, right? Oh, yeah. And in fact, this part is quoted and relied upon. It's, I'd say, the third sentence from the bottom of that rationale paragraph. With the evidence available, there is a lack of information about his original injury and the degree of disability that exists today. Right. So this doctor was troubled by these two things, information about his original injury and certainly the degree of disability that exists today is not pertaining to his original injury, right? That's pertaining to the degree of disability that exists today. How can you possibly tell me that documents from a private physician that he is consulting within the last couple of years related to this exact disability are not relevant to the degree of disability that exists today? Well, because there would be, if that was a question, still open in his... Based on the medical examiner, and that exact question was repeated in the board's view, which they adopted. I apologize, Your Honor, but on page 11 of the appendix, this is the VA, the Veterans Court decision. No, not the Veterans Court decision, the board decision. Yes, Your Honor. It's quoted in the board's decision. I completely agree, but let's recall that the Veterans Court found that the board did error in not asking for these documents but went through this analysis and found no prejudicial error. The reason why, specifically for the question of the current condition that Mr. Ables is currently suffering, is because the VA acknowledged his current condition. So that element of service connection, the VA conceded. And that, I can quote the sentence here in the Veterans Court decision. Wait, I'm sorry. Can the Veterans Court decision make fact... Can the Veterans Court make fact findings outside of just deciding whether something's harmless error? Well, the Veterans Court was just recognizing what the VA had conceded, Your Honor. Let's look at the board decision, because the board decision reflects what the VA decided. Isn't it? I mean, the open question that prevented Mr. Ables from receiving benefits was not current condition. It was not the incident. It was nexus. That's the problem. The Veterans Court says, therefore, the records of recent treatment of appellant's left knee would be irrelevant because VA has acknowledged appellant's current conditions. So what the Veterans Court is saying is, the current condition of Mr. Ables has been conceded by VA. It is not an element of service connection that needs to be proved. What needs to be proved is service connection. I'm sorry, but I fail to understand how a sentence that says the VA acknowledges his current condition responds to the concern that the medical doctor had and the board had regarding the degree of disability that exists today. I guess the sentence that you just read, it doesn't seem to me. Well, I'll keep reading because the next sentence helps as well, Your Honor. The element of service connection that appellant has yet to establish is not presence of current disability, but rather causal nexus. And it goes on to quote this court as to about causal nexus. This question that I have about Dr. Graves' comments, and I don't know that you'll be able to answer it because it's really a question for Dr. Graves. He did a complete examination. Correct. And his examination occurred in February of 2013. Dr. Krokendorffel's investigation and examination occurred in January of 2013, so they were only a month apart roughly. How is it that Dr. Graves is saying that the degree of disability that exists today is not known when he's just finished conducting a physical examination to determine the degree of disability? That's correct, Your Honor. What is that sentence saying? Right, that question is not answered in the record, but thankfully the question does not need to be answered because what prevented Mr. Ables from receiving service connection was the lack of causal nexus, not his current condition. And, you know, as we discussed in our brief on page 4, the reason why the, and we quote in full on page 4 of our brief, the reason why causal nexus was not demonstrated by these Western orthopedics documents, why they could not be demonstrated, was because of the lay testimony of Mr. Ables, which stated that his doctor would not make a nexus determination. Wait, did he say that? What percentage did he say? Well, I'm characterizing it, Your Honor. I can quote it in full if you would like. Sure, go ahead. Why don't you tell me what he said. And what page it is in the record? It's page 183 of the record and also page 4 of our brief. 183. And now what page 183 is, Your Honor, is a submission by Mr. Ables from February of 2013, so I guess a month after his meeting with the doctor. And he says, quote, on page, this is page 183 and the fourth paragraph, quote, I inquired if Dr. K could attribute my knees, shoulder, hip, and hand conditions to my 1964 injuries in the U.S. Army. Dr. K stated he could not, due to time over 40 years, no evidence of broken bones and tissues as cartilage and tendons are difficult to affix at time of damage. However, Dr. K did state that it may be more than coincidental that I suffer such a large number of painful orthopedic issues and a common or primary cause appears to be very reasonable deduction. So based on this is just his lay testimony, this guy isn't a doctor and he didn't have, in order to present his private military records to you, which we don't know what those private records written by Dr. K actually say on this point, do we? No, and Your Honor, I just found out today that they are in possession of Mr. Ables from my colleague and I would have loved to have seen these during the litigation. It could have informed my decision on this case, but I did not receive them. I don't know what they say. What we do know what they say from... But we don't know what these documents say, but we know this is the exact same injury as he's seeking a disability for, and we know that Dr. K has at least verbally, or this veteran has represented that Dr. K has at least verbally said it's a very reasonable deduction, they all came from a primary injury, it seems more than coincidental. I mean, it seems to me that Dr. K is, according to this veteran, hedging or uncertain, maybe potentially uncertain, but he said that Dr. K did say something about the likelihood. So why, if there is a private medical record, which has been reported to the government, to say something about the likelihood, something that is not totally clear based on the person's lay testimony, why wouldn't it be relevant? Because this is the issue that's at the heart of all of this, according to you, which is nexus. So Dr. K said something about nexus. We're not certain what he said. It tends against the veteran, but we're not certain what he said. He said something. Why isn't that reference relevant? I would disagree with him. We're not certain what he said. We have the testimony from Mr. Ables here. This is Mr. Ables delivering testimony, which he's permitted to do under 38 CFR 3.159. Competent lay testimony would include his recitation of what his doctor told him. Well, but the doctor's, presumably the doctor's report, will not be put in exactly the same terms. It would be surprising if he uses exactly the same language that the lay witness is using. Well, let me ask you another question, if I could. To go back to a point that we touched on in your opposing counsel's argument, the determination of harmless error from the court does seem to be limited to the failure to give reasons and explanation for the private medical records issue. Do you read what the court has done to be addressed to harmless error also with respect to the issue of relevance, or instead just be a determination of no relevance, period, without regard to harmless error? What I think the Veterans Court is doing here, Your Honor, what we believe the Veterans Court is doing, my opinion doesn't matter, what we think is that the board is the body that should have initially determined whether or not the Western Orthopedics documents met the gold standard. Right, and having failed to do so, that sort of sets up the argument that the court should have sent it back for the board to go ahead and do what they're supposed to do. But they didn't do that. Correct, they did not. And the reason is, what is the justification for their having not done that? Right, so why can now the Veterans Court go ahead and do it initially? As we've already discussed today, the Veterans Court can make fact findings, and when we're talking about prejudicial error. Only in the harmless error setting. Correct. But that runs up, it seems to me, against your opposing counsel's argument that a harmless error was only invoked with respect to the reasons issue. But what is the second part of the gold standard? It is harmless error. Whether or not these documents could help substantiate the claim. I don't think of that as harmless error. Well, it certainly is, Your Honor, because we're saying these documents were a mistake that actually harmed Mr. Ables by not discussing them and not receiving them. If Your Honors have no further questions, we respectfully request the court dismiss the hearing. Thank you, Mr. Grimaldi.  Ms. Geiser, you'll have three minutes for rebuttal. Thank you, Your Honor. Your Honors, what we've just been discussing is the pronged-to error out of gold, that there was no way without viewing the records based on a lay summary statement of a discussion with a doctor, not medical records, that the Veterans Court, which lacks medical expertise to know what types of information, could show not only current severity but service nexus for Mr. Ables' claims. This court, as far back as Moore, said it doesn't understand how the Veterans Court could know those records were not relevant or specifically, quote, had no possibility of substantiating the claim. So I think the case law is specific. And as far back as McGee, which I believe is the first duty-to-assist case out of this court, McGee's claim was for records that the court said very specifically may or may not tend to support his claim. But as this court explained in Goltz, citing Black's Law Dictionary and its definition of relevance, something is relevant if it tends to prove or disprove the claim at issue. And the Court of Appeals concluded that, in this case, it didn't. It didn't tend to prove. And my question to you is, what is the legal issue that you, what would we say by way of the legal error that the Court of Appeals committed was, now fill in the blank? Yes, the Court of Appeals committed the legal error of making a factual finding in the first instance that medical records for which it lacked the appropriate expertise required by Regulation 3.159 to review could not substantiate the claim. It is, I would argue, it's impossible for any medical professional to know whether something absolutely could not. But certainly it's impossible for an appellate court in the first instance to make a factual finding of impossibility on the merits. That is legal error, as this court explains in Sullivan, because it exceeds the appellate jurisdiction of the court. It's legal error under 3.159 because it is a, it lacks the required medical expertise to make a medical decision. Unless it's viewed as a harmless error issue. Which, Your Honor, it couldn't, I agree with you, it couldn't be viewed as a harmless error situation. That makes sense for the reasons and basis. On the 5103A issue, either the duty to assist the veteran attaches or it does not. If it attaches, then the failure to retrieve relevant records and to proceed with the adjudication of the claim on the merits without all of the, all the relevant information is, of course, prejudicial error. Can I ask, is one of your legal arguments that you think would be responsive to Judge Bryson potentially the definition of relevant and that this decision by the Veterans Court on its face would fly in direct contrast with the definition of relevant that was articulated in Moore and as such would create a conflict in our precedent by suggesting that the very set of facts that kind of are on all fours with Moore don't meet the definition of relevance as defined by the court? Yes, Your Honor. I think this court has been consistent and I think that the Veterans Court misinterpreted this court's precedent on the relevance issue. Thank you, Counsel. We'll take the case under revisal.